BENOIST, ET AL., vs. THE CITY OF ST. LOUIS.

1. Under the act of February the 8th, 1843, reducing into one, the several acts relative to the incorporation of the city of St. Louis, and providing that lands within the limits of the city, which have not been laid off into blocks and lots, shall not be assessed or taxed otherwise than by the acre, as agricultural lands, and shall continue to be so assessed and taxed, till laid off into blocks and lots, by the owners thereof respectively. Lands not laid off into blocks and lots, may be taxed according to their actual value; and there is nothing in the act requiring the corporation to tax them according to the supposed profits that might be made from them, were they used for agricultural purposes.

## J. C. RICHARDSON, City Counsellor.

1. The Constitution declares, "that all property subject to taxation in this State, shall be taxed in proportion to its value: Const. of Mo., Art. 18, Sec. 19. This is an absolute rule, controlling the Legislature in the exercise of the taxing power, and from which it cannot depart. The city of St. Louis derives its power to levy and collect taxes from the General Assembly, and it is conveyed in these words: "The Mayor and City Council shall have power within the limits of the city, by ordinance, to levy and collect taxes, not exceeding one per centum upon all property made taxable by law for State purposes." The power in the city to tax, is delegated, and it cannot exercise any greater power than the sovereign that created

It. It cannot claim or exercise the right to violate the Constitution, and the Legislature cannot delegate a power it does not possess: City of Lexington, vs. McQuillan's heirs, 9 Dana, 516. If the Legislature cannot tax property but in "proportion to its value," it cannot command, and the law ought not to permit the city to do it.

II. The Legislature may select the subjects of taxation, but, after making the selection, they have not the power of exempting any portion of that species of property so selected, or of taxing unequally: Sutton's heirs vs. Louisville, 5 Dana 31. They may select real estate, and exempt every other description of property, but they cannot say that every acre shall be taxed alike. They may say that slaves, over a particular age, shall be taxed, but they cannot say that every slave without regard to age, sex, or value shall be taxed the same amount. One tract of land is valuable for its agricultural productions; another on account of the buildings upon it; another for its mineral resources; another for its water privileges, and another on account of its proximity to a thoroughfare or growing city. If the Legislature can tax land in reference to any other standard than its value, they may say that, only hemp lands or wheat lands shall be taxed. Real estate, in a city, is never valued in reference to its fertility, and if it were indebted for its taxable properties, to its capability for agricultural productions, many tracts, worth millions in the market, but too poor to produce a spear of grass, would be exempt from taxation altogether. Every artificial standard is unjust, and actual appraisment is the only constitutional and practical mode of valuation: Pike vs. the State, 5 Pike 204 (directly in point.) In this case, the enactment in question discriminates between country property and town lots, by declaring that lands should be valued without reference to the improvements thereon, but that town lots should be valued with the improvements thereon. The Court says, " if such tax be imposed on any improvements on land, every improvement thereon, of the like kind, class or description, must be equally taxed according to its value. If, for instance, a tax be imposed on brick houses, no house of that description can be legally exempt therefrom, but all such, whether situated in a city, town or village, or in the country, must contribute equally; that is, in proportion to their value, to the revenue of the State. * * * * * * And the Legislature possesses no power to restrict its operation to such lands or improvements thereon, or to any other property subjected to such taxation, as may be situated in any specified portion of the State, or in any sectional or legal division or subdivision thereof, because no such restriction can possibly exist, if the tax imposed be equal and uniform throughout the State: page 207.

### Spalding & Shepley, for respondents.

1. The Court below acted legally in perpetuating the injunction; for the city had no right under the circumstances of this case, to assess the land of the appellees, at its actual value, and tax it accordingly.

The city Charter, February 8th, 1843, page 124, sec. 10, provides, that the land in the new limits should not be taxed, except as agricultural lands, by the acre, till laid off into blocks and lots by the owners.

This provision was made because these lands, farms adjoining to the old city, had been included in the city, as extended, without the consent of the owners; and the city had got largely in debt, for purposes which did not benefit those newly brought into the limits, &c.

This distinction was constitutional: 13 Mo. Rep. 400; 9 Mo. Rep. 507, where the taxing is restricted to one-sixteenth of one per cent., on certain lands, and held good and legal.

The article of the Constitution as to equality of taxation, is inapplicable. See Charter of 1843, page 123, sections 3 and 8. The city has power to compel lot owners to pay for sewers, for paving side-walks, &c. Also, the Road laws are illustrations of this principle.

II. The city had no right to tax the land higher than one-sixteenth of one per cent., till certain improvements had been made, which were not completed when the assessment was made.

The city Charter, taking effect from and after the 31st of March, 1841, sec. 17, p. 139, enacts, that within twelve months the Council "should cause to be graded and macadamized the carriage way of Broadway, south of Seventh Washington avenue and Market streets, 25 feet wide from the boundaries of the city, established by this act, to the nearest point macadamized within the present limits of the city, and until such carriage ways are made and completed, the lots and grounds, beyond the present limits of the city, shall not be taxed for city purposes, more than one-sixteenth of one per cent:" 13 Mo. Rep. 400, City vs. Allen: The above section was continued in force by the Charter of 8 Feb., 1843.

It is understood that the city acquiesces in the decision, that the one-sixteenth of one per cent. was all that could be collected by the city until the improvement was made. The counsel for the city do not raise this point, but only the point of agricultural lands. Now it seems to me, that the Court have decided the principle in the case cited above, in the 13 Mo. Reports. That case settles the doctrine, that the city authorities have a right to tax unequally, when authorized so to do by the General Assembly.

The constitutional provision, that property subject to taxation, shall be taxed according to value, applies only to taxes levied by the State. It does not apply to municipal corporations. In them, we are taxed on their property for sundry public improvements, unequally.

But the extension of the new charter may be considered conditional. The lands, agricultural, taken into the city limits, shall not be within the city legislation, for all purposes till the owners give their consent, by subdivision into lots and squares. This, certainly, was competent for the Legislature to do. A farm may be added to the city on condition that the owner assents to it, and expresses that assent by some act, or, it may be included within the city limits for some purposes and not for others.

SCOTT, J., delivered the opinion of the court.

The plaintiff's were owners of a tract land, of a portion of which, 211 acres and a fraction, was thrown within the new limits of the city of St. Louis, by the act of 1841, entitled "An act to amend an act to incorporate the city of St. Louis." By the 17th section of the 7th article of this act it is provided, that the lands thrown within the limits by its authority, should not be taxed more than one sixteenth of one per cent., until certain improvements, beneficial to the residents and land holders within the new limits, should be made, which were required to be completed within twelve months from the passing of the act. On the 8th of February, 18 3, an act was passed to reduce into one, the several acts relative to the incorporation of the city of St. Louis, the 10th section of which (art. 6) provides, that lands within the limits of the city, which have not been laid off into blocks and lots, shall not be assessed or taxed otherwise than by the acre as agricultural lands, and shall continue to be so assessed and taxed till laid off into blocks and lots by the owners thereof respectively. The actual value of the land was estimated at $6,000 per acre, but, if used for agricultural purposes only, its estimate worth was two hundred dollars per acre. The assessment was made on its actual value, $6,000 per acre, at the rate of one sixteenth of one

Benoist, et al., vs. the City of St. Louis.

per cent., according to the provisions of the act of 1841. The plaintiff appealed from the assessment to the city authorities, in pursuance to the ordinance in relation to appeals, when the assessment was confirmed, and they then applied to the Circuit Court for an injunction, when the proceedings were perpetually enjoined; from which decree the city of St. Louis appealed.

The question, in this case, arises on the above recited provision of the act of 1843. Shall the lands be taxed according to their actual value, or according to the supposed profits that might be made from them, were they used for agricultural purposes? The act of 1841 brought within the limits of the city some farms and portions of farms, and the act of 1843, from its terms, was designed to point out the mode in which they should be assessed. They are required to be assessed by the acre, as agricultural lands, until they are laid off into blocks and streets. If the ellipsis is supplied, the sentence will read as agricultural lands are assessed or taxed. This is the grammatical construction of the language of the act, and it comports with the obvious interest of the Legislature. There is nothing else in the act which shows that any other than the real value of the land, by the acre, should be regarded in assessing it. The object of the law, in increasing the limits of the city, was to make those contribute something to its improvement, whose lands had been so much enhanced in value by reason of her expenditures. If the mode of assessment contended for by the plaintiff is sanctioned, the purpose of the act will be defeated, as the product of such an assessment would scarcely compensate the officers in making and collecting it. For, let it be borne in mind, that at this time the assessment could not exceed one sixteenth of one per cent. Had the improvements contemplated by the act of 1841 been made within the new limits, would it be contended that afterwards, the land owners within them, for ground which they did not choose to lay out in blocks and lots, could only be taxed according to the profits which might be made from it when used for agricultural purposes. The amendment to the Charter in 1847 requires that one fourth of the taxes on lands and licenses collected within the new limits, shall be expended within them in improvements, and the act of 1849 gives one-half of these taxes for these purposes, and continues the act of 1847 in force for two years. Shall these improvements, made in part at the expense of others, continue to enhance the value of the estates of the land owners yearly, and yet, shall not their taxes be increased in proportion to the enhanced value of their property? By the mode of assessment contended for, while the yearly value of the land is increased, its value for agricultural purposes may be

Benoist, et al. vs. the City of St. Louis.

diminished.   The compensation to land holders for including their farms within the limits, is to be found in the great improvements required by the act of 1841, and not in the supposed mode of assessment, as is clearly shown by the guaranty given, that their taxes shall not exceed one-sixteenth of one per cent. until the improvements are made, while property within the old limits might be taxed as high as one-half of one per cent.

The other judges concurring, the decree will be reversed, the injunction dissolved, and the complainant's bill dismissed.